PEARSON, J.

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | |
|---|---|
| RITA TATE, ) | |
| ) | CASE NO. 4:16CV2369 |
| Plaintiff, ) | |
| ) | JUDGE BENITA Y. PEARSON |
| v. ) | |
| ) | |
| GENERAL MOTORS LLC, ) | **MEMORANDUM OF OPINION** |
| ) | **AND ORDER** |
| Defendant. ) | [Resolving ECF No. 28] |

Plaintiff Rita Tate, a former employee of Defendant General Motors LLC ("GM"), brought this action against GM alleging claims of: (1) race discrimination pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.* ("Title VII"), 42 U.S.C. § 1981 ("Section 1981"), and Ohio Rev. Code §§ 4112.02 and 4112.99; and, (2) gender discrimination pursuant to Title VII and Ohio Rev. Code §§ 4112.02 and 4112.99. These claims are now before the Court upon GM's Motion for Summary Judgment (ECF No. 28). The Court has been advised, having reviewed the record, the parties' briefs, and the applicable law. The Court has also considered the oral arguments of counsel offered during the Final Pretrial Conference on December 18, 2017. For the reasons set forth below, the motion is denied.[1]

---

[1] The Court announced its decision during the final pretrial.

## I.  Stipulated Facts

The stipulated facts[2] are as follows:

1.  Tate was hired on October 1, 2012 as a Group Leader on third shift in the Chassis Department at GM's assembly plant in Lordstown, Ohio (the "Lordstown Plant").

2.  Tate's starting salary was $60,000.00.

3.  As a Group Leader, Tate was responsible for managing teams of 36 hourly employees on an assembly line manufacturing automobiles, and sometimes supervised up to 72 employees.

4.  Tate had no experience working in manufacturing and had only limited experience working as a supervisor before she came to GM.

5.  Tate had worked as a corrections officer at the Ohio State Penitentiary since 2006 and her only previous supervisory experience – at JCPenney and in social services at Gateways to Better Living – involved supervising fewer than ten employees and had occurred 20 years earlier.

6.  Tate's experience was accurately stated in her resume, which was reviewed by GM before she was hired.

7.  Tate participated in a one-week orientation period in which general instruction on plant operations and processes was provided.

8.  On part of a day during orientation week, Tate shadowed another Group Leader and asked him many questions, which he answered to the best of his ability.  Plaintiff learned from the experience and found it helpful.

9.  Following orientation, Tate was assigned to the Chassis Department.

---

[2] *See* Undisputed Fact Stipulation (ECF No. 41).

(4:16CV2369)

10. Tate sought assistance where she could. For example, Team Leader Raymond Smith, a union employee, taught Tate the scrap process on the job.

11. Tate asked questions of Superintendent Ferdinand Martinez and Business Managers Bryon Woost and Janel Tyrus, although sometimes they were too busy to answer.

12. Woost provided Tate with training regarding grievances and timekeeping.

13. Martinez trained Tate on the Direct Run Rule.

14. Tyrus trained Tate regarding how to write discipline and end of line productivity reports.

15. A few weeks after she started, Tate spoke with HR Supervisor Terry Lipinsky and Lori Senvisky, assistant to Buddy Pryszbocki. After that, Bryon Woost came from time to time to provide training on various aspects of the job.

16. Plant Manager Robert Parcell signed off on Tate studying for a Master of Science in Lean Manufacturing at Kettering University at GM's expense, which was $900.00 per credit hour. Tate started the Kettering master's program on April 8, 2013, but she was discharged before she could complete the first class, which was to end on June 28, 2013.

17. GM provided Tate with a mentor, who met with her once, the week before she was discharged.

18. Tate was moved laterally to the Trim Department on second shift, under Superintendent Jim Downing, on or about March 4, 2013.

19. In late April or early May 2013, Tate was told she would be moved laterally to third shift in the Trim Department and work for Martinez.

3

(4:16CV2369)

20. On May 7, 2013, Downing, Martinez, and Lipinsky met with Tate regarding her performance review.

21. Tate's Deposition Exhibit 26 is a copy of the written performance review of Tate, completed May 6, 2013. Martinez and Downing completed Tate's performance review – Martinez completed the first assessment and Downing the second.

22. Tate started on third shift on May 13, 2013.

23. On May 16, 2013, Tate had her first performance counseling meeting with Lipinsky and Martinez.

24. On June 6, 2013, Tate again met with Martinez and Lipinsky.

25. In that meeting, Lipinsky instructed Tate to sign up for two online training courses, Listening Essentials and Improving Your Listening Skills. Tate completed the courses.

26. General Motors terminated the employment of Rita Tate on June 14, 2013.

## II. Standard of Review

Summary judgment is appropriately granted when the pleadings, the discovery and disclosure materials on file, and any affidavits show "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Johnson v. Karnes*, 398 F.3d 868, 873 (6th Cir. 2005). The moving party is not required to file affidavits or other similar materials negating a claim on which its opponent bears the burden of proof, so long as the movant relies upon the absence of the essential element in the pleadings, depositions, answers to interrogatories, and admissions on file. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The moving party must "show that the non-moving party has

(4:16CV2369)

failed to establish an essential element of his case upon which he would bear the ultimate burden of proof at trial." *Guarino v. Brookfield Twp. Trustees.*, 980 F.2d 399, 403 (6th Cir. 1992).

Once the movant makes a properly supported motion, the burden shifts to the non-moving party to demonstrate the existence of genuine dispute. An opposing party may not simply rely on its pleadings. Rather, it must "produce evidence that results in a conflict of material fact to be resolved by a jury." *Cox v. Ky. Dep't. of Transp.*, 53 F.3d 146, 150 (6th Cir. 1995). The non-moving party must, to defeat the motion, "show that there is doubt as to the material facts and that the record, taken as a whole, does not lead to a judgment for the movant." *Guarino*, 980 F.2d at 403. In reviewing a motion for summary judgment, the court must view the evidence in the light most favorable to the non-moving party when deciding whether a genuine issue of material fact exists. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587-88 (1986); *Adickes v. S.H. Kress & Co.*, 398 U.S. 144 (1970).

The United States Supreme Court, in deciding *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986), stated that in order for a motion for summary judgment to be granted, there must be no genuine issue of material fact. *Id.* at 248. The existence of some mere factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment. *Scott v. Harris*, 550 U.S. 372, 380 (2007). A fact is "material" only if its resolution will affect the outcome of the lawsuit. In determining whether a factual issue is "genuine," the court must decide whether the evidence is such that reasonable jurors could find that the non-moving party is entitled to a verdict. *Id.* Summary judgment "will not lie . . . if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* To withstand

5

(4:16CV2369)

summary judgment, the non-movant must show sufficient evidence to create a genuine issue of material fact. *Klepper v. First Am. Bank*, 916 F.2d 337, 342 (6th Cir. 1990). The existence of a mere scintilla of evidence in support of the non-moving party's position ordinarily will not be sufficient to defeat a motion for summary judgment. *Id.*

### III. Analysis

Plaintiff relies on the "cat's paw" theory of liability adopted by the Supreme Court in *Staub v. Proctor Hosp.*, 562 U.S. 411 (2011). In doing so, she claims that her supervisor, Jim Downing, and others whom were not the ultimate employment decision-maker, nonetheless, caused her termination. Memorandum in Opposition (ECF No. 40) at PageID #: 1130-32. Defendant argues the Court should focus narrowly on Downing and his lack of decision-making authority. Reply Memorandum (ECF No. 39) at PageID #: 1102-1103. The Court finds that Downing's behavior so permeated the work place that pretext is credible. Shift Superintendent Martinez and Downing completed Plaintiff's performance review – Martinez completed the first assessment and Downing the second. ECF No. 35 at PageID #: 461, ¶ 22. Downing gave Plaintiff lower feedback ratings for six of the seventeen "goals" and "dimensions." ECF No. 38-4 at PageID #: 863-71. Plaintiff urges that Defendant relied on Downing's notes as justification for its conclusion that Tate was an incompetent employee who must be fired. ECF No. 40 at PageID #: 1125.

Plaintiff has produced evidence sufficient to permit a jury to find Defendant liable for race and/or gender discrimination using the "cat's paw" theory. This phrase "refers to a situation in which a biased subordinate, whom lacks decisionmaking power, influences the unbiased

6

(4:16CV2369)

decisionmaker to make an adverse [employment] decision, thereby hiding the subordinate's discriminatory intent." *Cobbins v. Tennessee Dep't of Transp.*, 566 F.3d 582, 586 n. 5 (6th Cir. 2009). If a direct supervisor performs an act motivated by discriminatory animus that is intended to cause an adverse employment action and that act is a proximate cause of the adverse employment action, then the employer may be held liable based on the "cat's paw" theory. *See Romans v. Dept. of Human Servs.*, 668 F.3d 826, 836 (6th Cir. 2012) (employer may be liable under the cat's paw theory of liability when the decision-maker "acted as the conduit of the supervisor's prejudice") (internal brackets omitted). *See also Staub*, 562 U.S. at 422 (finding employer liable under Uniformed Services Employment and Reemployment Rights Act).

Defendant correctly intones that, first, Plaintiff must establish a *prima facie* case of discrimination using the *McDonnell Douglas* burden shifting analysis, in the absence of direct evidence. ECF No. 28 at PageID #: 146 (citing *Hooker v. City of Toledo*, 644 Fed.Appx. 675, 677 (6th Cir. 2016)). Plaintiff contends that her ability to meet this burden was stymied by Defendant's failure to timely and fully produce discovery.[3] Plaintiff urges that "[t]he question of comparators is muddied by the continuing discovery dispute, which includes GM's imposed limitations on disclosure of relevant information about other group leaders."[4] ECF No. 40 at PageID #: 1128 n. 2. In *Clay v. UPS*, 501 F.3d 695, 711-12, 716 (6th Cir. 2007), the Sixth

---

[3] *See* Order declaring discovery ended but for ongoing discovery dispute as to comparators, in part. ECF Nos. 24 and 36.

[4] Even at the final pretrial counsel could not agree that all that has been requested has been produced. Defendant says it has. Plaintiff claims she learned more from Defendant's summary judgment briefing about possible comparators than discovery. This ongoing dispute is resolved in favor of Plaintiff.

7

(4:16CV2369)

Circuit considered the employer's failure to turn over discovery in two instances: (1) attendance records that a second plaintiff could have used to show that he and the proposed comparators engaged in acts of comparable seriousness; and (2) certain bid sheets that could have been used to show one plaintiff and the proposed comparators were similarly situated. The district court granted summary judgment against both plaintiffs without requiring the employer to turn over the records in question. The Sixth Circuit reversed, ruling that the district court should have drawn adverse inferences against the employer for failing to disclose the attendance records and the bid sheets. *Id.* The Court of Appeals stated that "Clay should not be punished for his inability to point to the relevant comparators in this case[,]" because the "'general rule is that [w]here relevant information . . . is in the possession of one party and not provided, then an adverse inference may be drawn that such information would be harmful to the party who fails to provide it.'" *Id.* at 712 (quoting *McMahan & Co. v. Po Folks, Inc.*, 206 F.3d 627, 632-33 (6th Cir. 2000)). Drawing the adverse inferences against the employer on appeal, the Sixth Circuit concluded that each plaintiff established a *prima facie* case of discrimination and, because the plaintiffs pointed to evidence from which a jury could infer that the employer's proffered reasons for the employment decisions were pretextual, the Court of Appeals reversed the grant of summary judgment on the disparate treatment claims. *Id.* at 713, 717.

>As stated by the Sixth Circuit,
>
>*Clay* and this case also point to the problems inherent in allowing a defendant to control the designation of comparators by simply refusing to provide requested comparator evidence except as to those persons it selects. *See Paquin v. Fed. Nat'l Mortgage Ass'n*, 119 F.3d 23, 25, 28-29 (D.C.Cir. 1997) (reversing summary judgment and remanding for further discovery where employment discrimination plaintiff requested, but did not receive, comparator data). The

8

(4:16CV2369)

> refusal of a defendant to disclose requested comparator information denies plaintiff the opportunity to determine whether the evidence actually reveals comparator status and different treatment, critical elements of the claim that the trier of fact must determine. *See* Culwell v. City of Fort Worth, 468 F.3d 868, 873-74 (5th Cir. 2007) (holding Rule 56(f) motion should have been granted where plaintiffs sought comparator information, discovery was in defendants' sole possession, and such evidence could create genuine issues of material fact for trial on whether comparators were similarly situated, as well as on pretext).

Bobo v. United Parcel Service, Inc., 665 F.3d 741, 753 (6th Cir. 2012) (finding an improper denial of discovery occurred).

Based on the imperfect record before it, the Court agrees that Plaintiff's efforts to establish a *prima facie* case were hobbled by Defendant's failure to timely and fully produce discovery. *See* Plaintiff's Certification of Discovery Dispute (LR 37.1) (ECF No. 24); ECF No. 40 at PageID #: 1128 n. 2. The Court, therefore draws an adverse inference against Defendant and finds that Defendant's failure to make full, timely productions in compliance with discovery requests, sufficiently impeded Plaintiff's efforts to establish a *prima facie* case. Therefore, a *prima facie* case of race/sex discrimination is considered established.

Furthermore, genuine issues of material fact exist as to whether Downing acted with discriminatory intent and the influence his animus had on the ultimate adverse decision to terminate Plaintiff. This precludes summary judgment on a cat's paw theory of discrimination. Business Manager Kim Johnson, who was in the area when Downing threw a chair toward Plaintiff, told Tate to come with her to meet with Area Manager Buddy Pryszbocki, Downing's supervisor. In that meeting, Johnson (an African American woman) told Pryszbocki that this kind of abusive behavior occurred daily with Downing. Pryszbocki said that Downing was "old school" and Johnson responded that daily cursing, and now throwing a chair, were over the top.

(4:16CV2369)

She insisted that Pryszbocki needed to handle Downing. Ultimately, Pryszbocki said he would talk with Downing. Tate Deposition (ECF No. 38-1) at PageID #: 629-31.

HR Supervisor Terry Lipinsky, who investigated Downing, said that she was previously aware that Downing was unfriendly and sometimes treated employees unprofessionally using inappropriate language. Lipinsky Declaration (ECF No. 29-4) at PageID #: 360, ¶ 27. According to Plaintiff, there is no evidence that Area Manager Pryzbocki made a record of the complaint made to him by Tate and Business Manager Johnson about Downing's conduct. ECF No. 40 at PageID #: 1125. While Defendant describes Plaintiff as "simply a poor fit," ECF No. 39 at PageID #: 1105, and Downing as "rude," ECF No. 39 at PageID #: 1096-97, a jury should decide whether Plaintiff suffered discrimination.

**IV.**

Defendant General Motors LLC's Motion for Summary Judgment (ECF No. 28) is denied.

IT IS SO ORDERED.

 December 20, 2017       */s/ Benita Y. Pearson*
Date      Benita Y. Pearson
     United States District Judge